IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:15-CV-253-D

| | | |
|---|---|---|
| KIMBERLY SULLIVAN HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Kimberly Sullivan Hayes ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. (D.E. 17, 19). Both filed memoranda in support of their respective motions. (D.E. 18, 20). Plaintiff submitted with her memorandum a copy of a medical source statement and related email chain not previously included in the administrative record. (*See* D.E. 18 at 26-28). The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 21). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## BACKGROUND

## I.    CASE HISTORY

Plaintiff filed an application for DIB on 8 November 2011, alleging a disability onset date of 7 March 2007.  Transcript of Proceedings ("Tr.") 19.  The application was denied initially and upon reconsideration, and a request for hearing was timely filed.  Tr. 19.  On 24 September 2013, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff and a vocational expert testified.  Tr. 34-66.  The ALJ issued a decision denying plaintiff's claim on 9 December 2013.  Tr. 19-27.  Plaintiff timely requested review by the Appeals Council.  Tr. 12-15.  The Appeals Council granted the request for review on 4 March 2015 (Tr. 9-11), but on 24 April 2015, adopted the ALJ's findings and conclusions regarding whether plaintiff is disabled (Tr. 4-8).  The only error it found in the ALJ's decision was reliance on an incorrect Medical-Vocational Rule as a framework for his decision.  *See* Tr. 4; 6 ¶ 7.  At that time, the decision of the ALJ became the final decision of the Commissioner.  20 C.F.R. § 404.981.  Plaintiff commenced this proceeding for judicial review on 12 June 2015, pursuant to 42 U.S.C. § 405(g).  (*See* Compl. (D.E. 1)).

## II.    STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," the temporal criterion being known as the duration requirement.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509 (defining duration requirement); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are

of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4); *see Monroe v. Colvin*, No. 15-1098, __ F.3d __, 2016 WL 3349355, at * 1-2 (4th Cir. 16 June 2016).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Monroe*, 2016 WL 3349355, at *2; *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Monroe*, 2016 WL 3349355, at *2; *Pass*, 65 F.3d at 1203.

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

To establish entitlement to DIB, a claimant must show not only that he is disabled, but also that the disability began before the date of expiration of his disability insured status, known as the "date last insured" ("DLI"). 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a); *Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005).

## III.    ALJ'S FINDINGS

Plaintiff was 48 years old on the DLI and 49 years old on the date of the hearing. *See, e.g.*, Tr. 26 ¶ 7. The ALJ found that plaintiff has at least a high school education (Tr. 26 ¶ 8) and past relevant work as a medical coder (Tr. 26 ¶ 6).

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of 7 March 2007 through her DLI. Tr. 21 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: effects of status-post anterior cervical discectomy and fusion at C5-C7; degenerative joint disease of the right shoulder; left knee posterior cruciate ligament tear;

post-traumatic stress disorder; anxiety; and obesity. Tr. 21 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 21 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform sedentary work—work involving lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools[1]—subject to certain limitations. Tr. 23 ¶ 5. The limitations were as follows:

> [S]he could only occasionally push and pull with her bilateral lower extremities; she could only occasionally perform overhead reaching with her bilateral upper extremities; she could frequently reach in other directions with her bilateral upper extremities; she could frequently handle with her bilateral upper extremities; she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; she had to avoid concentrated exposure to hazards, such as dangerous moving machinery and unprotected heights; and she would be limited to simple, routine, repetitive tasks.

Tr. 23 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform her past relevant work. Tr. 26 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of information clerk, cashier, and interviewer. Tr. 26-27 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 7 March 2007, through her DLI of 30 June 2012. Tr. 27 ¶ 11.

---

[1] *See* 20 C.F.R. § 404.1567(a) (defining sedentary work); s*ee also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Sedentary Work," 1991 WL 688702. "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible

without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

<u>**OVERVIEW OF PLAINTIFF'S CONTENTIONS**</u>

Plaintiff contends that the medical source statement she submitted with her memorandum constitutes new evidence that warrants remand under sentence six of section 405(g) of the Act ("sentence six"). On the merits, plaintiff contends that the ALJ's decision should be reversed and DIB awarded or, alternatively, that this case be remanded for a new hearing on the ground that the ALJ erred in his determination that plaintiff did not meet or medically equal Listings 1.02, 1.04, and 12.06; his consideration of her obesity; and his RFC determination. The court finds no error.

<u>**DISCUSSION**</u>

## I. PURPORTED NEW EVIDENCE

### A. Applicable Legal Principles

Sentence six addresses remand when evidence is submitted for the first time to the court. Specifically, it provides for remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The Fourth Circuit has held that there are four requirements for a sentence six remand:

First, the claimant must demonstrate that the new evidence is relevant to the determination of disability at the time the claimant first applied for benefits[2] and

---

[2] The dissent in *Finney* explained the basis for this requirement, which is not stated expressly in sentence six:

> Although Sentence six does not explicitly require that new evidence must relate to the period previously considered by the ALJ, such a requirement is implicit in the materiality prong. *See Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991); *see also Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984) (explaining that, to warrant a Sentence six remand, the new evidence must "relate to the time period for which benefits were denied," and not be merely probative "of a later-acquired disability or of the subsequent deterioration of [a] previously non-disabling condition").

is not merely cumulative of evidence already on the record. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983)). Second, the claimant must establish that the evidence is material, in that the Commissioner's decision "'might reasonably have been different' had the new evidence been before her." *Id.* (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). Third, the claimant must show that good cause exists for her failure to present the evidence earlier. *Id.* And fourth, the claimant must present to the reviewing court "'at least a general showing of the nature' of the new evidence." *Id.* (quoting *King*, 599 F.2d at 599). In assessing whether the claimant has made these requisite showings, however, "[t]his Court does not find facts or try the case de novo." *King*, 599 F.2d at 599 (citing *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971)).

*Finney v. Colvin*, ___ F. App'x ____, No. 14-2141, 2016 WL 304107, at *4 (4th Cir. 26 Jan. 2016). As this statement of the four requirements indicates, the burden of showing that they are met rests with the claimant. *See Fagg v. Chater*, No. 95-2097, 1997 WL 39146, at *2 (4th Cir. 3 Feb. 1997); *Keith v. Astrue*, No. 4:11CV0037, 2012 WL 2425658, at *2 (W.D. Va. 22 Jun. 2012) ("The burden of demonstrating that all of the Sentence Six requirements have been met rests with the plaintiff."), *rep. & recomm. adopted by* 2012 WL 4458649 (9 Aug. 2012).

## B.    Analysis

Here, the evidence plaintiff contends warrants remand is a medical source statement by an adult nurse practitioner, Michael Stephens, ANP-BC, dated 6 August 2013. (ANP Stephens' Stmt. (D.E. 18 at 26-27)). In it, ANP Stephens indicates that plaintiff suffers from a chronic pain syndrome and has moderate to severe pain. (*Id.* at 26). He attributes the pain to "cervical degenerative changes & neck surgery and hardware placement[;] extensive degenerative changes in both knees, lumbar spine." (*Id.* at 26). ANP Stephens considers plaintiff to have marked restriction of daily living and marked difficulty in maintaining social functioning, and concludes that she would have difficulty performing even light administrative tasks. (*Id.* at 26-27). ANP

---

*Finney*, 2016 WL 304107, at *6 (King, J., dissenting). *But see, e.g.*, *Shoop v. Colvin*, Civ. No. TMD 13–1707, 2014 WL 2772730, at *11 n.6 (D. Md. 18 June 2014) (noting view that the first requirement in the four-part test from *Borders* has been superseded by amendment of § 405(g)).

Stephens' statement is accompanied by a copy of an email chain which plaintiff contends shows that she, in fact, had submitted the statement to the Appeals Council. (Email Chain (D.E. 18 at p. 28)).

It is apparent that plaintiff has satisfied the fourth requirement for remand by submitting the actual evidence she wants considered, not simply making a showing of its nature. It is no less apparent, however, that ANP Stephens' statement fails to meet the first requirement that it relate to the period of disability in issue. The statement is dated over a year after that period ended on 30 June 2012, again, plaintiff's DLI. Use of the present tense throughout the statement substantiates that it relates to plaintiff's condition at the time it was issued. The statement asks or asserts, for example, the following: "*Is* the patient suffering from a chronic pain syndrome?"; "In my opinion the patient *suffers* from pain that is . . . moderate to severe."; "The patient's pain *is* moderate to severe and *disrupts* her daily activities." (ANP Stephens' Stmt. 26-27) (capitalization modified and emphasis original). The statement contains no assertion that it applies to plaintiff's condition at any time other than the time it was issued.

Although in certain circumstances an inference can be drawn that evidence relating to a time after the alleged disability period sheds light on a claimant's condition during the alleged disability period, plaintiff has not demonstrated that such an inference is justified here, particularly in view of the length of time between plaintiff's DLI and issuance of the statement. Plaintiff's failure to satisfy the first requirement for sentence six remand defeats such remand because, of course, it is her burden to satisfy all four remand requirements.

Plaintiff, though, also fails to satisfy the second requirement of materiality. Among other reasons, as the ALJ points out in his decision, there are office visit notes from February 2012 and August 2012, closer in time to plaintiff's DLI than ANP Stephen's statement, indicating that

plaintiff was doing well. *See* Tr. 25 ¶ 5. One of the notes, dated 24 August 2012, was by ANP Stephens himself, stating, as recited by the ALJ, that "the claimant reported her current regimen had been effective." Tr. 25 ¶ 5 (referencing Tr. 555).

Moreover, as a nurse practitioner, ANP Stephens is not an acceptable medical source under the Regulations, and his opinions would not ordinarily be entitled to as much weight as an acceptable medical source, such as a physician or psychologist. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5 (9 Aug. 2006). Further, ANP Stephens' opinions could not be given controlling weight. *Carroll v. Colvin*, No. 7:14-CV-173-RJ, 2015 WL 5737625, at *8 (E.D.N.C. 30 Sept. 2015) ("[W]hile opinions from other sources such as nurse practitioners must be weighed and considered by the ALJ, they are not 'acceptable medical sources' as defined in 20 C.F.R. § 404.1513(a) and cannot be afforded controlling weight." (citing Soc. Sec. Ruling 06–03p, 2006 WL 2329939, at *2). In addition, ANP Stephens' opinions are ineffective to establish chronic pain syndrome as a medically determinable impairment because there must be evidence from acceptable medical sources to establish a medically determinable impairment. *See* 20 C.F.R. § 404.1513(a).

ANP Stephens' opinions are not supported by relevant evidence. This fact also tends to limit the weight to which his opinions could be given. *See* 20 C.F.R. § 404.1527(c)(3); Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (same factors used to determine the weight accorded the opinions of acceptable medical sources are used to determine the weight to be given the opinions of other sources).

Additionally, ANP Stephens' statement is to a significant degree cumulative of evidence already in the record. As the ALJ's decision makes clear, the record is replete with medical and other evidence that plaintiff experienced pain from conditions ANP Stephens found were the

basis of plaintiff's pain. *See* Tr. 24-25 ¶ 5. The ALJ also determined the condition of plaintiff's neck and left knee, which ANP Stephens cited, to be severe impairments. *See* Tr. 21 ¶ 3.

Lastly, as noted, ANP Stephens opined that plaintiff "would have difficulty performing even light administrative tasks." (ANP Stephens' Stmt. 27). To the extent that this assertion is deemed to be an opinion that plaintiff is disabled, it is not entitled to any special weight based on its source. *See* 20 C.F.R. § 404.1527(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996).

The court concludes that plaintiff has failed to show that the ALJ's decision might reasonably have been different had ANP Stephens' statement been before him. She has therefore failed to show that ANP Stephens' statement is material as required for sentence six remand.

Because plaintiff has failed to satisfy the first and second requirements for remand, her request for remand should be denied. This recommended disposition moots whether she satisfies the third requirement for remand—good cause for not submitting ANP Stephens' statement at an earlier stage in the proceedings—and the court declines to resolve that issue.

## II.     ALJ'S DETERMINATION ON LISTINGS

### A.     Listings Generally

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a). Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant is disabled. *Id.* § 404.1520(d). Each listing generally consists of a diagnostic description of the impairment and additional criteria, ordinarily set out in separate paragraphs, relating to the severity of the impairment at issue. An impairment meets a listing if it satisfies all the specified criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec.

Ruling 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F. 2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 404.1525(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 404.1526(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" *Jones ex rel. B.J. v. Astrue*, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. 16 Apr. 2012) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)), *rep. & recomm. adopted by* Order (22 May 2012) (D.E. 19); *Money v. Astrue*, No. 1:08cv895, 2011 WL 3841972, at *8 (M.D.N.C. 26 Aug. 2011) ("The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment." (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989))); *cf. Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted)).

### B. Listings 1.02 and 1.04

Plaintiff contends that the ALJ erred in finding that her impairments do not meet or medically equal the criteria of Listings 1.02 or 1.04. The court disagrees.

Listing 1.02 provides:

> 1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in *inability to ambulate effectively*, as defined in 1.00B2b;
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in *inability to perform fine and gross movements effectively*, as defined in 1.00B2c.

Listing 1.02 (emphasis added).

The "inability to ambulate effectively" refers to "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities" and "is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a handheld assistive device(s) that limits the functioning of both upper extremities." Listing 1.00B2b(1). Examples of ineffective ambulation "include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.* (2).

The "inability to perform fine and gross movements effectively" means "an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Listing 1.00B2c. Examples include "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." *Id.* Thus, to satisfy Listing 1.02, a claimant must satisfy the diagnostic description and the criteria in either paragraph A or B.

Listing 1.04 reads:

1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
    A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
    or
    B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
    or
    C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Listing 1.04.  Thus, to satisfy Listing 1.04, a claimant must satisfy the diagnostic definition and the criteria in at least one of paragraphs A, B, or C.

Here, the ALJ found expressly that plaintiff did not meet or medically equal Listing 1.02 or 1.04 (or the other Listings based on physical impairments):

With regard to physical impairments, upon a review of the evidence, the Administrative Law Judge finds that the claimant's physical impairments do not

alone or in combination meet or equal the criteria set forth in sections 1.02, 1.04, or elsewhere in the Listing of Impairments.

Tr. 22 ¶ 4.

He stated the basis for this finding as follows:

The claimant has not displayed the specific clinical and laboratory findings required by these sections or any other sections (20 CFR 404, subpt. P, app. 1 ).

Tr. 22 ¶ 4. The court understands this determination to signify that plaintiff's impairments do not meet or medically equal any of the criteria specified for Listing 1.02 or 1.04.

Although plaintiff challenges the ALJ's determination on Listings 1.02 and 1.04, she nowhere sets out the criteria for either listing or attempts to show specifically how she satisfies the diagnostic description or any of the severity criteria of either listing. Indeed, she does not identify which paragraphs of each listing she contends she satisfies. Thus, with respect to Listing 1.02, for example, she does not state that she suffered from either the inability to ambulate effectively or the inability to perform fine and gross movements effectively.

Instead, after reviewing selected medical evidence and portions of her testimony, she states that she continues to suffer from pain and her other alleged symptoms despite treatment. She also relies on ANP Stephens' medical source statement which, of course, is not relevant for reasons previously discussed with respect to plaintiff's request for a sentence six remand. Plaintiff's failure to present argument specifically addressing the Listings 1.02 and 1.04 alone justifies rejection of her challenge to the ALJ's determination on them. *See*, *e.g.*, *Farmer v. United States,* No. 5:12–CV–725–FL, 2013 WL 3873182, at *4 (E.D.N.C. 25 July 2013) (denying motion to dismiss by respondent without prejudice where respondent's supporting memorandum did not present specific arguments to each of the claims and instead "provide[d] vague and elusive references to petitioner's claims and ma[de] conclusory arguments for

dismissal"); *Wooton v. CL, LLC,* No. 2:09–CV–34–FL, 2010 WL 3767308, at *9 n.10 (E.D.N.C. 27 Sept. 2010) ("Failure to present specific argument in support of a motion to dismiss can result in a denial of the motion."), *aff'd,* 504 F. App'x 220 (4th Cir. 2013).

On the merits, though, it is readily apparent that substantial evidence supports the ALJ's determination on the severity criteria of Listings 1.02 and 1.04, including specifically the absence of inability by plaintiff to ambulate effectively or to perform fine and gross movements effectively as required in Listings 1.02A and B and Listing 1.04C, if not the diagnostic description of each listing as well. Such evidence includes the medical evidence regarding plaintiff's physical impairments the ALJ reviewed in his decision. The ALJ stated:

> In terms of the claimant's alleged impairments in further detail, and starting with records that focus on her physical impairments, a February 3, 2007, MRI showed a right paracentral disc/spur complex at C5-6 associate with degenerative uncovertebral joint changes, a disc/spur complex and uncovertebral joint changes at C6-7, and a small disc protrusion and spurring at C4-C5. Imaging that day also showed degenerative changes in her right shoulder with minimal irregularity and signal abnormality but with no acute osseous abnormality or focal glenolabral pathology demonstrated and no partial or full thickness rotator cuff tear, retraction, or atrophy (Ex. 5F/33, 35).
>
> The claimant then received anterior cervical decompression and fusion from C5 to C7 on July 24, 2007, with Russell Margraf, M.D. (Ex. 14F/8). *Thereafter, she was noted on October 23, 2008, by Dr. Margraf as doing well with resolution of arm pain and only some posterior neck discomfort. He wrote that the claimant was quite pleased with her operative results (Ex. 14F/2).* Radiological imaging on November 2, 2007, showed the fusion with no evidence of hardware failure or swelling (Ex. 14F/l).
>
> The claimant then presented at Cape Fear Valley Medical Center on January 4, 2011, following a motor vehicle accident with lower extremity injury (Ex. 2F/18). Imaging that day showed no cervical fracture (Ex. 2F/50). Radiological imaging of the claimant's left knee on January 4, 2011, showed positive arthritis in the patellofemoral and medial compartments (Ex. 5F/42). *Follow-up pain management care included at Neurology & Pain Management Center where on February 2, 2011, she reported she was "doing alright I guess" and Nailesh Dave, M.D., and other staff noted mild generalized knee edema and mild knee tenderness in her left knee then and on March 2, 2011, when the claimant stated she was "doing okay" (Ex. 4F/3, 5). Subsequent records of medication at*

> *Neurology & Pain Management were generally consistent, with a note of intact gait on October 14, 2011, and a note of well-controlled pain with medication and no side effects on November 11, 2011 (Ex. 4F/40, 42).*
>
> *More recently, notes from Neurology & Pain Management dated February 3, 2012, described only general mild tenderness over her neck, shoulder, and back with mild general left knee edema (Ex. 7F/4). Notes dated August 24, 2012, were basically unchanged with the claimant reporting she was "doing good" and a note by Michael Stephens, A.N.P., that the claimant reported her current regimen had been effective (Ex. 9F/1 ).*
>
> . . .
>
> As for other opinion evidence, the State agency physical consultant findings and opinions by Hari Kuncha, M.D., on June 21, 2012, that *the claimant could perform light work with additional limitations* are given great weight due to general consistency with the record as a whole (Ex. 3A/10, 11F).

Tr. 24-26 ¶ 5 (emphasis added).[3]

Additional supportive evidence includes plaintiff's statements, as recited by the ALJ, that "she still has been able to do cleaning and laundry" (Tr. 22 ¶ 4) and "could still drive when she needed to" (Tr. 24 ¶ 5). There is also plaintiff's testimony that she is able to walk from her house to her car and from her car to the doctor's office; raise her arms over her head to take light objects off of shelves; cook an easy meal; sweep briefly; get up and use the bathroom; turn doorknobs; and, possibly, open jars that are not hard to open.[4] Tr. 54, 55-56, 58.

The court concludes that plaintiff has failed to show that the ALJ's determination on Listings 1.02 and 1.04 is erroneous. Her challenge to it should accordingly be rejected.

---

[3] The fact that the ALJ's review of this evidence follows his determination on the Listings does not detract from its relevance to that determination because the ALJ's decision must be read as a whole. *See*, *e.g.*, *Manning v. Colvin*, No. 4:12–CV–204–D, 2013 WL 2617351, at *6 (collecting cases), *mem. & recomm. adopted by* 2013 WL 2617351, at *1 (E.D.N.C. 11 June 2013); *see also McCauley v. Colvin*, No. 7:12–CV–311–D, 2013 WL 7098724, at *9 (13 Dec. 2013) (finding that the ALJ's determination on Listing 1.04A and B was adequately supported by subsequent RFC analysis (citing *Jones v. Astrue*, No. 5:07–CV–452–FL, 2009 WL 455414, at *3 (E.D.N.C. 23 Feb. 2009))), *mem. & recomm. adopted by* 2013 WL 7098724, at *1 (E.D.N.C. 28 Jan. 2014).

[4] When asked whether she was able to "open up jars, and that sort of thing," she stated, "Not, not hard-to-open jars and stuff," which she said she had her husband do. Tr. 58.

## C.     Listing 12.06

Listing 12.06 relates to anxiety-related disorders.  The diagnostic description of Listing

12.06 reads:

> 12.06 Anxiety Related Disorders: In these disorders anxiety is either the
> predominant disturbance or it is experienced if the individual attempts to master
> symptoms; for example, confronting the dreaded object or situation in a phobic
> disorder or resisting the obsessions or compulsions in obsessive compulsive
> disorders.

Listing 12.06.

Listing 12.06 is met or equaled by satisfying, in addition to the diagnostic description, the

paragraph A and B criteria, or the paragraph A and C criteria.  Listing 12.06.   The paragraph A

criteria require, subject to additional specific requirements, medically documented findings of

generalized persistent anxiety, a persistent irrational fear, recurrent severe panic attacks,

recurrent obsessions or compulsions, or recurrent and intrusive recollections of a traumatic

experience.    Listing 12.06A.    The paragraph B criteria require that claimant's mental

impairments at issue result in at least two of the following:  marked restriction of activities of

daily living;  marked difficulties in maintaining social functioning;  marked difficulties in

maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of

extended duration.  Listing 12.06B.  The paragraph C criteria require the complete inability to

function outside the area of one's home as a result of a condition in paragraph A.   Listing

12.06C.

The ALJ did not explicitly address the paragraph A criteria of this listing.  Instead, he

found that plaintiff did not meet or medically equal Listing 12.06 for failure to satisfy the

paragraph B and C criteria.

With respect to the paragraph B criteria, the ALJ found as follows:

In activities of daily living, the claimant had mild restriction. Although the claimant describes limitation and having to rest, note that she has still been able to do cleaning and laundry is consistent with any restriction in activities of daily living being no greater than mild (Ex. 3E/3). This is also consistent with the findings of the State agency mental consultants (Ex. 1A/6, 3A/8).

In social functioning, the claimant had mild difficulties. In spite of the claimant's report that she does not enjoy being around people, her ability to still live with family is consistent with any difficulties in social functioning being no greater than mild (Ex. 4E/1 ). This is also consistent with the findings of a State agency consultant (Ex. 1 A/6).

With regard to concentration, persistence or pace, the claimant had moderate difficulties. The claimant described having to take breaks when performing tasks, but notes that she can continue to watch television and drive are consistent with any such difficulties being no greater than moderate (Ex. 3E/3-4, 4E/1). This is also consistent with the findings of the most recent State agency consultant (Ex. 3A/8).

As for episodes of decompensation, the record shows claimant had experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria were not satisfied.

Tr. 22 ¶ 4.

With respect to the paragraph C criteria, the ALJ found:

The undersigned has also considered whether the "paragraph C" criteria of listing 12.06 are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no record that the claimant has a complete inability to function outside the area of home.

Tr. 23 ¶ 4.

Plaintiff argues that the ALJ erred in not finding that she satisfied this listing. The court finds no error.

As with Listings 1.02 and 1.04, plaintiff does not set out the criteria for Listing 12.06 or attempt to show specifically how she satisfies the diagnostic description or any of the severity

criteria of the listing. She does not even identify which paragraphs of the listing she contends she satisfies. Rather, plaintiff's terse argument simply identifies the mental impairments she has, notes that she has been treated for these impairments, and recites symptoms she claims she continues to have despite treatment.[5] Again, as with Listings 1.02 and 1.04, plaintiff's failure to present argument specifically addressing her purported satisfaction of the criteria of Listing 12.06 itself warrants rejection of plaintiff's challenge to the ALJ's determination on this listing.

In any event, however, the challenge fails on the merits. Substantial evidence supports the ALJ's determination on Listing 12.06, including the evidence he cites in his determination. Additional evidence discussed by the ALJ also supports his determination on Listing 12.06:

> Turning to records that focus on her mental impairments, records dated May 12, 2011 at Carolina Psychiatry describe anxiety with symptoms such as difficulty concentrating, irritability, and panic attacks. Diagnosis by Amy Pharr, F.N.P.C., was for post-traumatic stress disorder and treatment included medication (Ex. 3F/1). Follow-[u]p visits with additional staff, including Tammy King, of unclear credentials, were generally consistent though *the claimant demonstrated improvement such that on May 25, 2011, and October 17, 2011, the claimant had overall normal focus and concentration, intact memory with normal concentration, intact judgment and insight, and overall normal mood and affect, although she was depressed with withdrawn behavior* (Ex. 3F/3, 13).

> The claimant received emergency room treatment at Cape Fear Valley Medical Center on July 30, 2011, for anxiety with note that she had not taken her Valium in several days and was treated with medication (Ex. 2F/10).

> *Additional records of treatment, including further visits with Shabbir Chowdhury, M.D., in 2012 with treatment including medication and note of overall normal mood and affect, such as on June 27, 2012, in spite of diagnosis for post-traumatic stress, are generally consistent* (Ex. 1F, 5F, 13F, 15F/16).

> *The State agency mental consultant findings and opinions by Steven Salmony, Ph.D., on January 9, 2012, and Jonathan Mayhew, Ph.D., on July 5, 2012, that the claimant could work with mild to moderate mental restrictions are given great*

---

[5] In connection with the ALJ's determination on Listings 1.02 and 1.04, plaintiff had referred to ANP Stephens' opinions that she had marked restriction of activities of daily living and marked difficulties in maintaining social functioning. To the extent that plaintiff intended these opinions to be considered with respect to Listing 12.06, they are not relevant as they were not with respect to Listings 1.02 and 1.04 for the same reasons previously discussed in connection with plaintiff's request for a sentence six remand.

*weight due to general consistency with the record as a whole* (Ex. 1A/6, 3A/8, 11F).

Tr. 25 ¶ 5 (emphasis added).

There is also this further evidence discussed by the ALJ:

She testified to limited range of motion in her neck following fusion, continued pain though medications help take the edge off, and post-traumatic stress disorder since a car accident, though *she also testified to only seeing her psychiatrist every two months and notes indicated she could still drive when she needed to* (Ex. 9E, 11E, 16E). Records of treatment, including from before the claimant's alleged onset date and from after her date last insured that were briefly reviewed for historical background, reflected a history of treatment including surgery and medication with *relatively normal mental status examinations on August 29, 2012, and May 7, 2013, showing overall normal mood and affect, normal focus and concentration, intact judgment and insight, and normal behavior and psychomotor activity except for being withdrawn* (Ex. 14E, 15E, 10F/1, 15F/l).

Tr. 24 ¶ 5 (emphasis added).

Plaintiff has therefore failed to show that the ALJ erred in his determination that she did not satisfy the paragraph B and C criteria of Listing 12.06. Because satisfaction of this listing requires satisfaction of at least one of these sets of criteria, the court concludes that the ALJ did not err in determining that plaintiff failed to satisfy this listing. Her challenge to this determination should accordingly be rejected.

## III.   ALJ'S CONSIDERATION OF PLAINTIFF'S OBESITY

Social Security Ruling 02-1p requires that an ALJ consider the effects of a claimant's obesity on his ability to perform routine movement and necessary physical activity in the workplace and make findings explaining his assessment of such effects. Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *6-7 (12 Sept. 2000). Plaintiff argues that the ALJ failed to meet these requirements. The contention is meritless.

As indicated, at step two of the sequential analysis, the ALJ expressly found claimant's obesity to be a severe impairment. *See* Tr. 21 ¶ 3. The ALJ thereby determined that it imposed

more than a minimal limitation on plaintiff's physical or mental ability to do basic work activities. *See* Soc. Sec. Ruling 85–28, 1985 WL 56856, at *3 (1 Jan. 1985) (providing that an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered"); *see also* 20 CF.R. § 404.1520(c) (providing that an impairment is severe only if it "significantly limits . . . [a claimant's] physical or mental ability to do basic work activities").

The ALJ again addressed plaintiff's obesity at step three of the sequential analysis, as part of his determination on the Listings:

> The undersigned has carefully evaluated the claimant's obesity under the criteria of Social Security Ruling 02-1p. On December 28, 2007, the claimant was measured at 5 feet, 5 inches and 194 pounds, equaling an obese body mass index ["BMI"] of 32.3 (Ex. 1F/5). The claimant's clinical levels of obesity, however, do not necessarily correlate with any degree of loss of function. The undersigned recognizes that the claimant's obesity may exacerbate her pain and other impairment symptoms, but finds that her obesity does not rise to listing-level severity.

Tr. 22 ¶ 4.[6]

Notably, the findings by the ALJ largely track the provisions of Social Security Ruling 02-1p, which states in relevant part:

> The Clinical Guidelines [of the National Institutes of Health] recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. . . . These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss.
>
> . . .

---

[6] Although the ALJ here uses the term "may" rather than "does" in describing whether plaintiff's obesity exacerbates her pain and other symptoms, the court does not deem this inconsistent with his prior finding that plaintiff's obesity is a severe impairment when read in context. The ALJ's focus was whether her obesity reached listing-level severity and, as addressed in the immediately succeeding paragraph, the ALJ's finding tracks the language of Social Security Ruling 02-1p.

> The combined effects of obesity with other impairments may be greater than might be expected without obesity.

Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *2, 7.

In determining plaintiff's RFC, the ALJ stated expressly that he took into consideration all of plaintiff's impairments, which would necessarily include the severe impairment of obesity he found her to have. The ALJ stated:

> All allegations, findings, and opinions are incorporated into the claimant's residual functional capacity to the extent they are given weight, and the residual functional capacity is specifically designed to accommodate for the claimant's impairments. For example, exertional, manipulative, postural, and environmental limitations are designed to accommodate for the claimant's physical impairments . . . .

Tr. 24 ¶ 5; *see also* Tr. 23 ¶ 5 ("In making this [RFC determination], the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . .").

Consistent with the ALJ's representation, his RFC determination includes limitations responsive to obesity. These include restriction of plaintiff to sedentary work; occasional pushing and pulling with her legs; occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and scaffolds; and avoidance of concentrated exposure to hazards, such as dangerous moving equipment and unprotected heights. *See* Tr. 23 ¶ 5. Social Security Ruling 02-1p recognizes such limitations as those that may be the consequence of obesity. *See* Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *6.

At step four, the ALJ found plaintiff unable to perform her past relevant work, which was sedentary, based on plaintiff's limitations "such as regarding workplace complexity." *See* Tr. 26 ¶ 6; 61. At step five, however, the foregoing obesity-responsive limitations again came into play. The ALJ included them in the hypothetical he provided the vocational expert and on the

basis of whose subsequent testimony the ALJ determined that there were jobs in significant numbers in the national economy that plaintiff could perform. *See* 27 ¶ 10; Tr. 61-63.

The court concludes that the ALJ did adequately consider the potential effects of claimant's obesity on her ability to perform work-related activities throughout the sequential analysis. The court accordingly rejects plaintiff's challenge to the ALJ's handling of claimant's obesity.

## IV. ALJ'S RFC DETERMINATION

A claimant's RFC is the most the claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1). The RFC must be determined on the basis of all the relevant evidence of record. *Id.*

Plaintiff contends that the ALJ failed to consider her neck and back pain and mental impairments, and their effect on her ability to perform work activities in determining her RFC. Plaintiff's contention is without merit. As the ALJ's decision makes clear, he considered the relevant evidence of record comprehensively in determining plaintiff's RFC.

For example, in his decision, the ALJ summarized plaintiff's testimony and other allegations by her regarding her symptoms and their effects. *See* Tr. 24 ¶ 5. In connection with this summary, the ALJ pointed out evidence relating to her allegations. *See* Tr. 24 ¶ 5. This summary reads:

> The claimant then presented at Cape Fear Valley Medical Center on January 4, 2011, following a motor vehicle accident with lower extremity injury (Ex. 2F/18). Imaging that day showed no cervical fracture (Ex. 2F/50). Radiological imaging of the claimant's left knee on January 4, 2011, showed positive arthritis in the patellofemoral and medial compartments (Ex. 5F/42). Follow-up pain management care included at Neurology & Pain Management Center where on February 2, 2011, *she reported she was "doing alright I guess"* and Nailesh Dave, M.D., and other staff noted *mild generalized knee edema and mild knee tenderness in her left knee* then and on March 2, 2011, when *the claimant stated she was "doing okay"* (Ex. 4F/3, 5). Subsequent records of medication at

> Neurology & Pain Management were generally consistent, with *a note of intact gait on October 14, 2011, and a note of well-controlled pain with medication and no side effects on November 11, 2011* (Ex. 4F/40, 42).

Tr. 25 ¶ 5 (emphasis added).

As set out previously, the ALJ also reviewed extensively the medical evidence of record relating to plaintiff's physical impairments. In addition, he reviewed the medical evidence of record relating to plaintiff's mental impairments:

> Turning to records that focus on her mental impairments, records dated May 12, 20 11 at Carolina Psychiatry describe anxiety with symptoms such as difficulty concentrating, irritability, and panic attacks. Diagnosis by Amy Pharr, F.N.P.C., was tor post-traumatic stress disorder and treatment included medication (Ex. 3F/1). Follow-[u]p visits with additional staff including Tammy King, of unclear credentials, were generally consistent though the claimant demonstrated improvement such that on May 25, 2011, and October 17, 2011, *the claimant had overall normal focus and concentration, intact memory with normal concentration, intact judgment and insight, and overall normal mood and affect*, although she was depressed with withdrawn behavior (Ex. 3F/3, 13).
>
> The claimant received emergency room treatment at Cape Fear Valley Medical Center on July 30, 2011, for anxiety with note that *she had not taken her Valium in several days and was treated with medication* (Ex. 2F/10).
>
> Additional records of treatment, including further visits with Shabbir Chowdhury, M.D., in 2012 with treatment including medication and note of *overall normal mood and affect*, such as on June 27, 2012, in spite of diagnosis for post-traumatic stress, are generally consistent (Ex. 1F, 5F, 13F, 15F/16).
>
> The State agency mental consultant findings and opinions by Steven Salmony, Ph.D., on January 9, 2012, and Jonathan Mayhew, Ph.D., on July 5, 2012, that *the claimant could work with mild to moderate mental restrictions* are given great weight due to general consistency with the record as a whole (Ex. 1A/6, 3A/8, 11F).

Tr. 25 ¶ 5 (emphasis added).

As previously discussed, the ALJ also reviewed plaintiff's activities of daily living. *See*

Tr. 22 ¶ 4.

As noted above as well, the ALJ stated expressly that he considered all relevant evidence in determining plaintiff's RFC.  Again, he stated:

> All allegations, findings, and opinions are incorporated into the claimant's residual functional capacity to the extent they are given weight, and the residual functional capacity is specifically designed to accommodate for the claimant's impairments.  For example, exertional, manipulative, postural, and environmental limitations are designed to accommodate for the claimant's physical impairments and her restriction to simple, routine, repetitive tasks is designed to accommodate for her mental impairments.

Tr. 24 ¶ 5.

> In addition, the ALJ summarized the basic factors underlying his RFC determination:

> In sum, the above residual functional capacity assessment is supported by factors such as the conservative nature of much of her treatment, relatively mild recent findings, and relatively accomplished activities of daily living such as driving. These factors are inconsistent with the alleged severity of the claimant's impairments and instead support her ability to work within her residual functional capacity.

Tr. 26 ¶ 5.

The evidence cited by the ALJ, among other evidence, constitutes substantial evidence supporting his RFC determination.  The only specific piece of evidence of evidence plaintiff cites in support of her argument regarding the ALJ's RFC determination is ANP Stephens' medical source statement.  That statement, though, is not relevant for the reasons previously stated.

As the ALJ indicates, in reaching his RFC determination, he discounted the credibility of plaintiff's allegations.  Although plaintiff does not directly challenge the propriety of the ALJ's credibility determination, it was proper.

An ALJ's assessment of a claimant's credibility involves a two-step process.  *Craig*, 76 F.3d at 593-96; 20 C.F.R. § 404.1529(a)-(c); Soc. Sec. Ruling 96–7p, 1996 WL 374186, at *1 n.1, 2 (2 July 1996).  First, the ALJ must determine whether plaintiff's medically documented

impairments could cause plaintiff's alleged symptoms. Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.; see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cv1742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

Here, the ALJ made the step one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged type of symptoms." Tr. 24 ¶ 5. But at step two, he found plaintiff's allegations not to be entirely credible. Tr. 24 ¶ 5. The ALJ explained in part as follows:

> The claimant's allegations are not generally credible given factors such as the conservative nature of much of her treatment, relatively mild recent findings, and relatively accomplished activities of daily living such as driving and the claimant's allegations are accordingly given only little weight.

Tr. 24 ¶ 5.

The factors cited by the ALJ are all proper considerations in evaluating a claimant's credibility. *See* 20 C.F.R. § 404.1529(c)(3); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not

disabling."). Substantial evidence supports the credibility determination, including much of the evidence cited by the ALJ in his decision as discussed herein.[7]

The court concludes that the ALJ's RFC determination, together with the credibility determination underlying it, was proper. The court accordingly rejects plaintiff's challenge to it.

## CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 19) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 17) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 20 July 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review**

---

[7] The ALJ properly discounted the reports of plaintiff's husband regarding her impairments for the same reasons he discounted plaintiff's allegations. *See* Tr. 24 ¶ 5 ("Third party function reports by the claimant's husband are similarly inconsistent with the record as a whole and receive similar, little, weight for the same reasons (Ex. 4E, 8E).").

of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Any response to objections shall be filed within 14 days after filing of the objections.

This 6th day of July 2016.

James E. Gates
United States Magistrate Judge